FARABEE-TREADWELL Co. *v.* UNION & PLANTERS' BANK & TRUST Co.

*(Jackson.* April Term, 1916.)

1. **ACTION.**  Contract or tort.  Action on contract.

An action against the bank for damages resulting from breach of a contract to loan money is an action sounding in contract, and not in tort. (*Post, pp.* 212, 213.)

Case cited and approved: James v. Bank, 105 Tenn., 1.

Code cited and construed: Sec. 4468 (S.)

2. **CONTRACTS.**  Mutuality.  Contract to loan money.

A bank is liable for breach of a contract to loan money in consideration of the transfer of a deposit, such a contract not being unilateral, the consideration being the agreed transfer of deposit. (*Post, pp.* 214-216.)

Cases cited and approved: Lowe v. Turpie, 147 Ind., 652; Anderson v. Hilton & D. Lbr. Co., 121·Ga., 688; Hedden v. Schneblin, 126 Mo. App., 478; Holt v. United Security L. Ins. & T. Co., 76 N. J. Law. 585; Bixby-Theirson Lbr. Co. v. Evans, 167 Ala., 431;

Case cited and distinguished: Manchester &·O. Bank v. Cook, 49 L. T. N. S., 694.

3. **DAMAGES.**  Contracts to loan money.  Damages for breach. Loss of profits.

Where a bank breached a contract to loan a grain dealer money with which to pay for corn purchased, and the grain dealer was thereby compelled to make a forced sale of the grain, he was entitled to recover the loss actually suffered by reason of the forced sale, but he was not entitled to recover a profit which he might have made by reason of an advance in the market; such profit being purely speculative. (*Post, pp.* 216, 217.)

Farabee-Treadwell Co. v. Bank & Trust Co.

FROM SHELBY

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— BEN L. CAPELL, Judge.

F. M. GILLILAND and J. H. MALONE, for plaintiff.

JACKSON & MCREE, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover damages from defendant bank for its refusal to make a loan of money to the complainant in violation of a previous contract entered into between the parties. Demurrers were interposed which were sustained by the trial court, and the suit dismissed. The court of civil appeals reversed the action below, held that the declaration presented a good cause of action, and remanded the case for trial. The bank has filed a petition for *certiorari*.

The declaration avers that the plaintiff was a mercantile corporation at Memphis dealing in grain and hay; that about December 11, 1912, defendant bank solicited plaintiff to change its bank account and become a depositor with defendant; that plaintiff then

135 Tenn.—14

advised defendant that considerable money was required in the business of the former, that it had purchased 20,000 bushels of corn for future delivery, and that it would need $10,000 to pay for the same prior to January 1st following. It is alleged that plaintiff and the bank then entered into an agreement whereby, in consideration of the removal of plaintiff's account to defendant bank, the latter undertook to loan to the plaintiff as much as $10,000 to pay for the said purchase of corn upon delivery to defendant of plaintiff's note secured by collaterals, such as bills of lading or warehouse receipts covering the purchase of corn. According to the declaration, plaintiff explained that it was a member of the Merchants' Exchange of Memphis, and under the rules of the exchange was required to pay for any commodity purchased on the day delivery was tendered, and that if such payment was not made plaintiff would be suspended from the Exchange and its credit destroyed. It is charged that defendant bank informed plaintiff that the bank itself belonged to the Exchange and was familiar with its rules. It is then averred that in pursuance of this agreement plaintiff removed its account from another bank and deposited $3,859.88 with defendant, and thereafter, on December 20th, plaintiff notified defendant that the corn referred to would be delivered within a few days, and it would need the $10,000. It is alleged that defendant then and there promised to make this loan to plaintiff on the terms aforesaid. The declaration then charges that on December 26, 1912, one-half of

the corn was tendered to plaintiff, and plaintiff applied to defendant for part of the loan agreed upon, to wit, $5,000, but that defendant willfully and wantonly breached its contract, "and its president, in a loud, insulting tone, and in the presence of divers citizens, without any excuse, wantonly and willfully, and with a reckless disregard of the rights of the plaintiff, refused to loan plaintiff said sum and carry out the contract of the defendant, whereby and by reason whereof plaintiff was compelled to resell said corn and other commodities owned by it upon the open market at a great loss to it," etc. It is said that when the bank thus breached its contract it was too late for the plaintiff to procure a loan elsewhere to pay for the corn purchased, for which, under the rules of the Exchange, settlement had to be made on the day upon which delivery was tendered.

The foregoing facts are stated in four counts of the declaration, and the plaintiff sues in one count for $1,000 damages which it lost by reason of the necessity of making a forced sale of the grain to meet its obligation therefor. In another count of the declaration plaintiff sues for $1,500 damages which it claims to have sustained by reason of a loss of profit on the transaction; it being set out that the price of corn immediately advanced and plaintiff was deprived of its expected profit. Another count of the declaration seeks damages for the injury to the credit and financial standing of plaintiff said to have resulted from the action of the bank in the premises which it is charged

became noised about. The fourth count of the declaration sets out the facts and groups the claims for damages separately set up in the three previous counts.

The declaration also alleges that, when this loan was refused by the president of the bank, the said bank official in a violent and insulting manner. directed the plaintiff to remove its account from defendant bank, and that this statement was made in the presence of divers good citizens near by.

There has been much discussion in the case as to whether this was an action upon the contract or in tort. The court of civil appeals took the view that it was a suit in tort, and that plaintiff was accordingly entitled to recover all damages it sustained growing out of the tort, which that court thought included every item of damage set out in the declaration aforesaid.

We are unable to agree with the conclusion of the court of civil appeals that this can be treated as a case in tort. It cannot be likened to the case of *James v. Bank,* 105 Tenn., 1, 58 S. W., 261, 51 L. R. A. (N. S.), 255, 80 Am. St. Rep., 857, in which the bank refused payment of the checks of a customer who had an adequate balance. It was held in that case that the law imposed upon the bank the duty of paying its depositor's checks as long as there was a sufficient balance to the depositor's credit. So the bank violated an obligation imposed by law as well as by contract.

In the case before us it is charged that the bank refused to make the loan as it had agreed, and ordered the depositor to remove its account. In neither respect did the bank violate any duty imposed by law. The law did not require the bank to make the loan, nor did it require the bank to keep plaintiff's account any longer than it desired. No question of tort arises so far.

If the president of the bank committed a legal wrong by the violent way in which it is said he refused this loan and ordered plaintiff to remove its account, in the presence of others, the wrong consisted in speaking such words in such a manner in the presence of others, not in the act of refusing the loan and closing the account. Granting that such treatment injured the credit of the plaintiff, nevertheless the injury was caused by the words of the bank president spoken in the presence of others and communicated to others. Such, at least, was the only semblance of violation of legal duty on the part of the bank official, and the only thing upon which an action in tort could be predicated. Such conduct, if actionable, is so because the words spoken were slanderous. One ground of demurer is that more than six months elapsed after the incident at the bank and the bringing of this suit. In so far as the action could be suspected as one resting upon tort, this demurer would defeat it. Shannon's Code, section 4468.

Treating the suit as one upon contract, the bank demurs on the theory that no damages can be recovered for the breach of the contract to lend money except nominal damages, or the difference between the contract rate of interest and the prevailing rate at which money might be elsewhere obtained. Such is the general rule with respect to the breach of contracts of this nature. *Lowe* v. *Turpie,* 147 Ind., 652, 44 N. E., 25, 47 N. E., 150, 37 L. R. A., 233; *Anderson* v. *Hilton & D. Lbr. Co.,* 121 Ga., 688, 49 S. E., 725; *Hedden* v. *Schneblin,* 126 Mo. App., 478, 104 S. W., 887.

Other cases, however, hold that under special circumstances there may be a recovery of substantial damages proximately resulting from a breach of contract to lend money—losses directly incurred by the injured party. *Holt* v. *United Security L. Ins. & T. Co.,* 76 N. J. Law, 585, 72 Atl., 301, 21 L. R. A. (N. S.), 691, and *Bixby-Theirson Lbr. Co.* v. *Evans,* 167 Ala., 431, 52 South., 843, 29 L. R. A. (N. S.), 194, 140 Am. St. Rep., 47.

A number of cases on the subject are collected in notes in 37 L. R. A., 233, and 29 L. R. A. (N. S.), 194.

In *Manchester & O. Bank* v. *Cook,* 49 L. T. N. S., 694:

"One of the judges said where special damage is the result of a breach of contract to lend money, and a person is deprived of the opportunity of getting money elsewhere, the ordinary rule of damage applies." Ed. note, 37 L. R. A., 233.

The declaration in this case avers that under the rules of the Merchants' Exchange, to which plaintiff belonged, payment for commodities purchased had to be made upon the date delivery was tendered. It seems from the declaration that the bank was advised of this rule, being itself a member of the Exchange, and the agreement for this loan was made with this rule of the Exchange in contemplation of both parties to this contract. The declaration sets out that, when the bank breached its contract to make the loan to plaintiff, it was then too late for plaintiff to procure funds elsewhere to pay for the corn purchased within the time payment was required under the rules of the Exchange, and plaintiff was accordingly under the necessity of making a forced sale of the grain.

If the plaintiff is able to establish upon a trial of the case that it did have such contract as charged, and that the bank breached it under the circumstances detailed in the declaration, and that plaintiff did not have time after the loan was refused to procure funds elsewhere in order to meet its obligation, then under such circumstances we think the bank is liable to the plaintiff for the special damage claimed. That is to say, the bank is liable for the loss plaintiff suffered by reason of the necessity of making a forced sale of this corn. Such loss naturally and proximately followed the bank's breach of contract under the circumstances alleged, and was a loss necessarily within the

contemplation of the parties under the peculiar contract averred.

The conduct of the bank imputed to it by the declaration deprived the plaintiff of an opportunity to get money elsewhere, and the case falls directly within the rule announced in the expression of the judge in *Manchester & O. Bank* v. *Cook,* supra.

Another ground of demurrer is that the alleged contract is unilaterial. We think the court of civil appeals properly overruled this demurrer. The fact that plaintiff was not required to borrow the money did not relieve the bank of its obligation to make the loan as it had contracted to do. The bank received a substantial deposit as a consideration for its agreement to extend this credit when called upon.

Another ground of demurrer challenges the right of plaintiff to recover the $1,500 claimed as the difference between the price at which it purchased the corn and the price at which corn thereafter sold on the market. It is insisted that such damage was not within the contemplation of the parties at the time of the contract.

Whether such an item might be said to have been within the contemplation of the parties need not be determined. We think recovery must be denied to the plaintiff for two reasons.

In the first place, such a claim of damage is purely speculative. The grain market fluctuates, and no one can possibly say at this time when the plaintiff would have sold the corn purchased. There might have

been a loss on the transaction. At any rate, the amount of the lost profit cannot be determined because it cannot be concluded with any certainty at what stage of the market plaintiff would have sold the grain.

Moreover, it was the duty of the plaintiff to have done everything possible to mitigate its damage. If it had enjoyed the credit and standing averred in the declaration, it might, after the bank had refused the loan, have procured funds elsewhere and bought other grain and obtained the benefit of the rise in the market. The bank should not be held responsible for the inaction of the plaintiff, a trader and grain dealer, at this time.

The conclusion that the action is not one in tort, or is barred in so far as a tort is averred, denies recovery for the alleged injury to plaintiff's credit. If plaintiff proves the case stated in the declaration, there may be a recovery for the loss by reason of the forced sale of the grain. In the opinion of the court, the loss of profits is speculative.

Other grounds of demurrer are overruled.

The judgment of the court of civil appeals, modified as herein indicated, is affirmed, and the case remanded for further proceedings.